# EXHIBIT 2

1

Volume I
Pages 1 to 271
Exhibits 1 to 24

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - -x
                                    :
EMMANUEL THIERSAINT,                :
                                    :
            Plaintiff,              :
                                    :
        vs.                         :  Civil Action
                                    :  No.
DEPARTMENT OF HOMELAND              :  18-cv-12406-DJC
SECURITY; U.S. IMMIGRATION          :
AND CUSTOMS ENFORCEMENT;            :
WILLIAM CHAMBERS, in his            :
individual capacity; JOHN DOE       :
DEFENDANTS 1-10; unknown ICE        :
Agents, in their individual         :
capacities; SUFFOLK COUNTY          :
SHERIFF'S DEPARTMENT; JOHN          :
DOE DEFENDANTS 11-16, unknown       :
officers of the Suffolk             :
County Sheriff's Department         :
in their individual                 :
capacities; and UNITED STATES       :
OF AMERICA,                         :
            Defendants.             :
                                    :
- - - - - - - - - - - - - - - - - -x

        DEPOSITION OF EMMANUEL THIERSAINT, a
witness called by the Defendants Department of
Homeland Security, U.S. Immigration and Customs
Enforcement, William Chambers and the United States
of America, taken pursuant to Rule 30 of the Federal
Rules of Civil Procedure, before Anne H. Bohan,
Registered Diplomate Reporter and Notary Public in
and for the Commonwealth of Massachusetts, on
Friday, January 22, 2021 commencing at 9:03 a.m.

(ALL PARTICIPANTS ATTENDED VIRTUALLY BY ZOOM
TELECONFERENCING)

2

PRESENT:

    Jerome N. Frank Legal Services Organization
        (By Muneer I. Ahmad, Esq.,
        Supervising Attorney,
        Kshithij Shrinath, JD Candidate,
        Derrick Rice, JD Candidate,
        Julia Geiger, JD Candidate,
        Rebecca Steele, JD Candidate and
        Kathleen Olds, JD Candidate)
        127 Wall Street
        New Haven, CT 06511
        203.432.4716 ~ Fax 203.432.1426
        muneer.ahmad@ylsclinics.org
        kshithij.shrinath@ylsclinics.org
        derrick.rice@ylsclinics.org
        julia.geiger@ylsclinics.org
        rebecca.steele@ylsclinics.org
        kathleen.olds@ylsclinics.org
        for the Plaintiff.

    United States Attorney's Office
        (By Eve A. Piemonte, Assistant U.S.
        Attorney)
        John J. Moakley U.S. Courthouse
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        617.748.3369
        eve.piemonte@usdoj.gov
        for Department of Homeland Security,
        U.S. Immigration and Customs Enforcement,
        William Chambers and United States of
        America.

    Suffolk County Sheriff's Department
        (by Melissa J. Garand, Assistant General
        Counsel)
        200 Nashua Street
        Boston, MA 02114
        617.704.6680 ~ Fax 617.704.6692
        mgarand@scsdma.org
        for the Department.

ALSO PRESENT:  Suzanne Travis
               Andrew Bowes
               John Bellflower

3

I N D E X

WITNESS                  DIRECT    CROSS    REDIRECT    RECROSS

EMMANUEL THIERSAINT

 BY MS. PIEMONTE          8

 BY MS. GARAND                          203


                        *  *  *  *

                   E X H I B I T S

NO.                      DESCRIPTION                      PAGE

 Exhibit 1    Complaint for Compensatory,            44
              Injunctive, and Declaratory
              Relief

 Exhibit 2    Plaintiff Emmanuel Thiersaint's       151
              Answers to the Government's
              First Set of Interrogatories

 Exhibit 3    Plaintiff Emmanuel Thiersaint's 154
              Answers to William Chambers'
              First Set of Interrogatories

 Exhibit 4    Respondent's Declaration in           156
              Support of Motion to Reopen His
              Removal Order

 Exhibit 5    Declaration of Emmanuel               158
              Thiersaint in Support of his
              Motion to Reopen and Motion for
              Emergency Stay of Removal

 Exhibit 6    ICE document headed "Detainee         165
              Request to ICE" re Emmanuel
              Thiersaint dated 3/25/16

4

1                    E X H I B I T S, Continued

2      NO.                      DESCRIPTION                    PAGE

3      Exhibit 7     LaSalle Detention Facility                168
                     Detainee Request Form re
4                    Emmanuel Thiersaint dated
                     3/2/2016
5
       Exhibit 8     Document headed "eMAR Record"             177
6                    being for Emmanuel Thiersaint
                     printed on 12/9/2016
7
       Exhibit 9     Document entitled "Medical                179
8                    Summary of Federal
                     Prisoner/Alien in Transit" form
9                    from Franklin County House of
                     Correction to Suffolk County
10                   dated 2/17/16

11     Exhibit 10    NaphCare document headed "Drug            177
                     Orders -- Thiersaint, Emmanuel
12                   1600930"

13     Exhibit 11    Krome Clinic document headed              184
                     "Medication Administration
14                   Record"

15     Exhibit 12    Document entitled "NaphCare               185
                     Medical Department Sick Call
16                   Request -- Managed by TechCare"
                     dated 3/25/16
17
       Exhibit 13    Document headed "NaphCare Sick            189
18                   Calls -- Thiersaint, Emmanuel
                     1600930"
19
       Exhibit 14    Franklin County Sheriff's                 191
20                   Office document entitled "Sick
                     Call/Medical Request" dated
21                   2/15/16

22     Exhibit 15    U.S. ICE document re Emmanuel             193
                     Thiersaint dated 3/18/2016
23

24

5

E X H I B I T S, Continued

| NO. | DESCRIPTION | PAGE |
|-----|-------------|------|
| Exhibit 16 | Hill Health Center medical record for Emmanuel Thiersaint dated 8/24/10 | 206 |
| Exhibit 17 | Franklin County Sheriff's Office Interdiscplinary Progress Notes for Emmanuel Thiersaint dated 1/13/10 | 209 |
| Exhibit 18 | Hill Health Center/Behavioral Health Division Medical Management Note dated 7/5/11 | 211 |
| Exhibit 19 | St. Vincent's Medical Center History and Physical Reports document dated 8/30/2014 | 214 |
| Exhibit 20 | Plaintiff's Answers to Suffolk County Sheriff's Department's First Set of Interrogatories | 216 |
| Exhibit 21 | UCONN Health Center Clinical Record dated 1/28/16 | 218 |
| Exhibit 22 | Franklin County House of Correction document headed "Special Needs Notification" dated 2/5/16 | 223 |
| Exhibit 23 | Document entitled "Suffolk County House of Correction Receipt of Inmate Guide Form" dated 2/18/16 | 228 |
| Exhibit 24 | NaphCare document entitled "Mental Health Evaluation Completed by Erika Marques, MHC on 3/24/2016" | 232 |

\* \* \* \*

6

1              P R O C E E D I N G S

2              MS. PIEMONTE:  So, counsel, if we can just

3    review the usual stipulations so they are on the

4    record.  All objections, except as to form, are

5    reserved until the time of trial.  All motions to

6    strike are also reserved until the time of trial.

7    Would you like the witness to read and sign the

8    deposition transcript?

9              MR. SHRINATH:  Yes.

10             MS. PIEMONTE:  Would you like 30 days to do

11   so?

12             MR. SHRINATH:  Yes.

13             MS. PIEMONTE:  We will agree to waive the

14   notary for Mr. Thiersaint's signature.  Is that

15   acceptable?

16             MR. SHRINATH:  Yes.

17             MS. PIEMONTE:  And all parties agree to

18   proceed under the usual stipulations?

19             MR. SHRINATH:  Yes, from the Plaintiff.

20             MS. GARAND:  Agreed on behalf of Suffolk

21   County.

22             MS. PIEMONTE:  Additionally, I'd like to do

23   a short statement and ask the parties to agree at

24   the end of the statement to the proceeding in this

1    remote manner.

2          The parties stipulate pursuant to Federal

3    Rules of Civil Procedure 29 and 30 that this

4    deposition is being taken by remote means; that the

5    court reporter is not in the same room with the

6    witness; and the parties agree not to challenge the

7    validity of any oath administered by the court

8    reporter.  The parties agree that nothing about this

9    remote deposition process will impair in any way the

10   use of the deposition as permitted by the Federal

11   Rules of Civil Procedure.

12          Do the parties agree to that?

13          MS. GARAND:  Agreed on behalf of Suffolk

14   County Sheriff's Department.

15          MR. SHRINATH:  Kshithij Shrinath on behalf

16   of the Plaintiff and I agree.

17          MS. PIEMONTE:  Thank you.  So the witness

18   has been sworn.  I'm sorry, Ms. Bohan, I didn't

19   know, did you see a picture ID for Mr. Thiersaint?

20          THE REPORTER:  Yes, I did.

21          MS. PIEMONTE:  Sorry, I missed that part.

22

23

24

8

1                    EMMANUEL THIERSAINT

2    a witness called for examination by counsel for the

3    Defendants Department of Homeland Security, U.S.

4    Immigration and Customs Enforcement, William

5    Chambers and the United States of America, having

6    been satisfactorily identified by the production of

7    his driver's license and being first duly sworn by

8    the Notary Public, was examined and testified as

9    follows:

10                   DIRECT EXAMINATION

11       BY MS. PIEMONTE:

12       Q.   Good morning, Mr. Thiersaint.  As you are

13   aware, I represent the Federal Government and the

14   Defendants in this action.  I'm going to be asking

15   you a number of questions today, and if you don't

16   understand a question I ask, please tell me that you

17   don't understand and I'll try to rephrase that.

18   Okay?

19       A.   Yes.

20       Q.   I also ask that you please answer any

21   questions verbally.  If you nod your head or shrug

22   your shoulders, the court reporter can't put that

23   into a transcript, and so we'll ask that all of your

24   responses today be verbal.  Do you understand that?

72

1            Then he said, "Then you're going to have to

2    stay here, because there's no -- you won't be able

3    to -- there's no -- you won't be able to go in the

4    population."  If I can't use the crutches, he won't

5    be able to put me in population.

6        Q.   Did he tell you -- how many times did you

7    speak to Officer Chambers?

8        A.   I speak to him -- I speak to him a few

9    times.

10       Q.   A few times in February?

11       A.   Only when he comes, when he comes, because

12   he don't come every day.  Only when he comes.

13       Q.   Did you speak to him every time he came?

14       A.   When he comes I tried to talk to him, yes.

15       Q.   Officer Chambers, when he visited Suffolk

16   County, would check in on you?

17            MR. SHRINATH:  Objection.

18       A.   He used to come to the hospital, and that's

19   when I asked him, "Come on, I need to -- I don't

20   want to be in seg 23 hours down and only get one

21   hour outside."  And he kept denying, he kept saying,

22   "Well, you're only going to be here for a few days,"

23   this and that.  And he said he's not going to put me

24   in population.

74

1      A.    It was the doctor and him.

2      Q.    And "him" meaning Officer Chambers?

3      A.    Officer Chambers, yes.

4      Q.    Did you do anything else to try to get

5 yourself moved from medical housing to general

6 population during that time?

7      A.    I asked everybody, I asked anybody, because

8 I don't want to be 23 hours down.  I was trying to

9 ask anybody.  I talked to anybody, whoever, the COs,

10 whoever, trying to find a way to get out of there.

11 I asked the nurse.  I asked the nurse, and they say,

12 "You have to wait for the doctor, you have to talk

13 to the doctor."

14           So I talked to Chambers about it, the ICE

15 officer, because it's like they have other inmates,

16 they're not ICE.  I had a different suit.  My suit

17 was like -- it was an ICE suit.  So I asked anybody,

18 because I don't want to be 23 hours down.  I wanted

19 to have recreation.  I wanted to have commissary and

20 to be able to move around, move my legs and do

21 things, like everybody else was doing.  The ICE, the

22 same thing, I wanted to have the same thing.

23      Q.    Apart from your request to move to general

24 population, did you ever specifically ask Officer

1  Chambers to get you access to a law library?

2      A.   Yes.

3      Q.   How did you do that?

4      A.   I asked him, I said, "I need to build my

5  case.  I need to be able to see cases like me to

6  then be able to see -- be able to read cases, be

7  able to see what's going on.  And he denied me.

8      Q.   And this was all verbal?

9           MR. SHRINATH:  Objection.

10      Q.   Did he deny you access to the law library

11  or to general population?

12      A.   The law library.

13           MR. SHRINATH:  Objection.

14      A.   The gen population.

15      Q.   Both?

16      A.   Yes.

17      Q.   So it's your testimony that you

18  specifically asked Officer Chambers to get you

19  access to the law library, correct?

20           MR. SHRINATH:  Objection.

21      A.   To population, to the law library, yes.

22      Q.   I'm sorry, Mr. Thiersaint, I need to be

23  clear.  What is it --

24      A.   The population, it's to the population, and

77

1      A.    I don't remember if I did.

2      Q.    You didn't fill out an ICE detainee request

3  seeking access to computers, did you?

4          MR. SHRINATH:  Objection.

5      A.    I don't remember.

6      Q.    You're familiar with submission of ICE

7  detainee requests, right?

8          MR. SHRINATH:  Objection.

9      A.    Yes.

10     Q.    In fact, you had submitted one before to

11 Officer Chambers, right?

12         MR. SHRINATH:  Objection.

13     A.    I don't remember.

14     Q.    In the medical housing unit you were able

15 to shower, correct?

16     A.    I was able to shower when I get out -- when

17 I get out of that cell, when I get my only one hour,

18 that's when I was able to take a shower.  Every time

19 I take a shower, the whole hour was already -- the

20 whole hour was gone.

21     Q.    So were you not able to access the law

22 library because you took that time to shower?

23         MR. SHRINATH:  Objection.

24     A.    No.  I had an hour, and that's the hour I

1    he comes.  When he comes, he doesn't come every day.

2    Every time he comes there, when I get to see him, I

3    asked him about my medication.  I asked him about my

4    medication.  I asked him about the commissary.  I

5    asked him about the public library.  He denied me

6    all that stuff.

7        Q.   When you say he denied you, what do you

8    mean?

9        A.   He said no.  He said you can't use no -- he

10   just said no.

11       Q.   So is it your testimony that Officer

12   Chambers told you you could not have your

13   medication?

14            MR. SHRINATH:  Objection.

15       A.   Well, when I talked to the doctor, when I

16   talked to the nurse, they said they don't give you

17   that type of medication.  They don't give you

18   medication there, no psych meds there.  They won't

19   give them to me.

20       Q.   So the doctors and nurse told you you were

21   not going to get the medication that you were

22   requesting, correct?

23       A.   Yes.

24       Q.   Did Officer Chambers tell you you could not

1    have the medication you were requesting?

2         A.    I asked him for my medication.  He said

3    that -- he said, "Whatever they tell you, that's

4    what it is."

5         Q.    So is it fair to say Officer Chambers said,

6    whatever the medical personnel you were speaking to

7    said, that was the answer with regard to your

8    medication, correct?

9         A.    Yes.

10        Q.    During any -- during your first -- during

11   your time in the Medical Housing Unit, did you have

12   the ability to make telephone calls?

13        A.    When I seen him, he let me make a phone

14   call.

15        Q.    Officer Chambers did?

16        A.    Yes.

17        Q.    Were you allowed to make calls other than

18   through Officer Chambers?

19        A.    I also would have called my lawyers.  I

20   also would have -- I also would have called my

21   lawyer.

22        Q.    You've testified about several

23   conversations that you had with Officer Chambers

24   about being in medical housing rather than general

84

1   population.  Have you testified to all of the

2   conversations you had with Officer Chambers about

3   your placement in medical housing?

4          MR. SHRINATH:  Objection.

5      A.   I asked him, I said, "What am I doing here?

6   What am I doing 23 hours down?  I have to be in

7   population.  I don't want to be here 23 hours down."

8   That's when he keeps telling me, "You got to use

9   crutches, you got to use crutches."  And he was very

10  mean, he was very rude, and he didn't want to

11  answer.  It's really like my words didn't mean

12  anything to him and I couldn't get to him.  It was

13  really, like, harsh, it was like I was a nobody to

14  him.

15     Q.   Are there any other conversations that you

16  can recall having with Officer Chambers in February

17  of 2016 while you were in medical housing?

18     A.   Say that again.

19     Q.   Any other conversations that you had with

20  Officer Chambers while you were in medical housing

21  in February of 2016?

22          MR. SHRINATH:  Objection.

23     A.   I don't remember.

24     Q.   I'm sorry, what was your answer?

1    A.    Yes.

2    Q.    How did you get from Krome to the airport?

3    A.    They had I don't know if it was a van or a

4    bus.  I had to get up in the bus, ask for help to

5    get to -- because it was not equipped for disabled

6    people, for us, I mean for me with a wheelchair.  So

7    I asked for help to get in, and they said that you

8    have to get in -- I think it was -- I don't remember

9    if it was a bus or a van.  They say, "You have to

10   get in any way you can, it's going to be difficult

11   for you."  So I had to find my way.  I had to get in

12   my way.

13          So I scoot up from the steps, the bottom

14   steps, then turn my back to the steps, sit down and

15   do one step.  When I get to my chair, I put my knee

16   down, stand up, and be able to sit down in the

17   chair.

18   Q.    Do you have any memory of ICE officers

19   arriving at Krome with a handicap-accessible van to

20   bring you to the airport on March 17th?

21   A.    There was no bus equipped for me.  I always

22   wanted a bus that was equipped for me to feel safe,

23   to always be able to strap on and lift me up.  But,

24   no.

168

1      A.    Yeah, they did let me make some phone

2  calls, yes.

3      Q.    I'm now going to show you the next document

4  that's been premarked, if I can, as Document No. 00.

5  It's taking a minute to load.  Sorry about this,

6  folks.  Here we go.  Sorry about that delay.

7            I'm showing you what's been premarked as

8  Exhibit OO.  Do you see this form?

9      A.    Yes.

10     Q.    It's titled "LaSalle Detention Facility

11  Detainee Request Form"; is that right?

12     A.    Yes.

13            MS. PIEMONTE:  If we could mark this as

14  Exhibit No. 7.

15                    (Document marked as Thiersaint

16                    Exhibit 7 for identification)

17     Q.    Is this your handwriting, Mr. Thiersaint?

18     A.    Yes.

19     Q.    Can you tell me -- the date here is March

20  2nd, 2016.  Do you see that?

21     A.    Yes.

22     Q.    Do you see the type of requests that you

23  could make on this form?

24     A.    Yes, I see it.

169

1     Q.   What are the things that you could request
2     on this form at LaSalle?  Let me ask you this.
3     Could you make a request involving the mail?
4     A.   The mail?  Yes, I see "mail," yes.
5     Q.   Could you make a request to ICE?
6     A.   Yes.
7     Q.   Could you make a request to use the law
8     library?
9     A.   Yes.
10    Q.   Could you make a request for all sorts of
11    things, including recreation or visitation or, in
12    this case, laundry?
13    A.   This is at LaSalle?
14    Q.   Yes.
15    A.   That's Louisiana?
16    Q.   Yes.
17    A.   Louisiana.  Yes.  But when I was in
18    Louisiana, I wasn't going to be there for a long
19    time, I was to stay only for a couple of days.  I
20    was to leave in a couple of days.
21    Q.   In this case, you were requesting that you
22    didn't have enough boxers, towels, sheets, blankets
23    and socks?
24    A.   Yes.

236

1    unit?

2             MR. SHRINATH:  Objection.

3        A.    I don't know if I filed a grievance, but I

4    did talk to anybody that I can.  I was told to wait

5    for the doctor.  I wait for the doctor.  I talked to

6    anybody, the nurse, anybody I was able to talk to.

7    I talked to the CO.  I don't want to be in the -- I

8    want to go to the population.  I don't want to stay

9    in the hospital.

10       Q.    But did you actually put anything in

11   writing?

12            MR. SHRINATH:  Objection.

13       A.    I don't remember.

14       Q.    You don't remember if you put anything in

15   writing; you only remember that you spoke to people;

16   is that correct?

17            MR. SHRINATH:  Objection.

18       A.    I don't remember putting something in the

19   thing, putting something in.

20       Q.    Can you repeat that, please.  I didn't hear

21   it.

22       A.    I don't remember putting something in, no,

23   I don't remember that.  But I remember I talked to

24   anybody about the situation about me being in the

237

1    hospital.  I don't want to be in the hospital.

2         Q.    But you don't remember filing a grievance;

3    is that correct?

4         A.    I don't remember, no.

5         Q.    Did you file a sick slip stating that you

6    didn't want to be in the Medical Housing Unit?

7         A.    I don't remember.

8              MR. SHRINATH:  Objection.

9         Q.    Did you file a grievance with ICE

10   indicating that you didn't want to be in the Medical

11   Housing Unit?

12             MR. SHRINATH:  Objection.

13        A.    Say that again.

14        Q.    Did you file a grievance with ICE

15   indicating that you didn't want to be in the Medical

16   Housing Unit?

17             MR. SHRINATH:  Objection.

18        A.    I don't remember filing anything.  I don't

19   remember.

20        Q.    Other than the fact that you did not want

21   to be in the Medical Housing Unit, did you have any

22   other issues or concerns while you were there?

23             MR. SHRINATH:  Objection.

24        A.    Yes.  23 hours down and no T.V., no T.V. or